**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Terri HB Corbett,<br><br>Debtor(s). | C/A No. 09-00079-JW<br><br>Adv. Pro. No. 11-80142-JW<br><br>Chapter 13<br><br>**ORDER** |
| Terri HB Corbett,<br><br>Plaintiff(s),<br><br>v.<br><br>Mitchell W Corbett,<br><br>Defendant(s). | |

This matter comes before the Court upon the Complaint filed by Terri HB Corbett ("Debtor") against Mitchell W. Corbett ("Defendant") alleging a willful violation of the automatic stay. Defendant denied that a willful violation took place, and a trial was held. Pursuant to Fed. R. Bankr. P. 7052, the parties' filings, and the testimony and arguments presented at the trial, this Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. Debtor and Defendant were divorced by an order (the "Divorce Decree") of the Colleton County Family Court (the "Family Court") dated April 17, 2007 in Case No. 06-DR-15-75. Incorporated into the Divorce Decree was a settlement agreement (the "Settlement Agreement"), pursuant to which Debtor was granted primary custody of the parties' only child, among other terms. The Settlement Agreement also required Debtor to make payments on her vehicle, a 2005 Kia Sorento (the "Kia"), to Wachovia and also to make payments on a debt with

CitiFinancial. Neither of these obligations to pay were in the nature of a domestic support obligation.

2. On January 6, 2009, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. On her Schedule D, Debtor listed Wachovia as the holder of a secured claim, the collateral of which was the Kia. Debtor also stated on Schedule D an intent to surrender her interest in the Kia. CitiFinancial was listed as the holder of an unsecured claim on Schedule F. Debtor's Schedule H listed Defendant as the co-debtor on both the Wachovia and CitiFinancial claims. Defendant did not file a proof of claim in Debtor's case.

3. As the result of Debtor failing to make her car payments and stated intent to surrender the Kia, the Kia was repossessed and later sold. In an attempt to recover the deficiency that it was owed after the sale, Wachovia commenced collection efforts against Defendant as the co-borrower on the note which had been secured by the Kia.

4. On February 13, 2009, Defendant initiated Case No. 2009-DR-15-95[1] before the Family Court by filing a complaint (the "Custody Complaint") that sought a change in primary custody of the parties' only child. The Custody Complaint stated Defendant's alleged reasons why he should be granted sole custody of the child.

5. On February 27, 2009, Defendant also filed an affidavit (the "Affidavit") with the Family Court in connection with the Divorce Decree in Case No. 06-DR-15-75. The Affidavit stated that Debtor had violated the Divorce Decree and Settlement Agreement by failing to make payments to Wachovia on the Kia and to CitiFinancial to the detriment of Defendant's credit. Additionally, the Affidavit alleged that Debtor had withheld information from Defendant

---

[1] It appears that some of the documents related to the Custody Complaint proceedings, including the pre-trial order, were numbered as Case No. 2009-DR-15-96. However, the main documents in those proceedings, including the Custody Complaint and final order, listed Case No. 2009-DR-15-95 in the heading.

2

regarding the whereabouts of their child's day care facility in violation of the Settlement Agreement.

  6. Based on the Affidavit, a rule to show cause (the "Rule") was issued in Case No. 06-DR-15-75 ordering Debtor to appear before the Family Court to explain why she had violated the Divorce Decree and Settlement Agreement. A hearing on the Rule (the "Rule Hearing") was held on March 23, 2009. Upon learning of Debtor's bankruptcy case at the Rule Hearing, the Family Court stayed all matters relating to the Wachovia and CitiFinancial debts and later issued an order (the "Rule Order") on May 1, 2009. The Rule Order stated in part:

> There are three (3) matters that the Court has been asked to rule upon. The first two are debts that were Ordered to be maintained by the [Debtor] in her Divorce Decree. The [Defendant] has represented that they have not been paid. The attorney for the [Debtor] has represented that they are currently tied up in the [Debtor's] bankruptcy and has provided verification to the [Family] Court regarding that matter. Due to the automatic stay issued by the [B]ankruptcy Court, those two matters are held in abeyance.
>
>   The third issue is the [Debtor's] failure to provide the [Defendant] with information regarding the child's current pre-school. The parties' Divorce Decree indicates that the father shall be permitted to pick up the minor child from the child's daycare facility. . . . The [Debtor's] justification for continually failing to provide this information is without merit and I find that she is in contempt of the [Divorce Decree] regarding that matter. . . .
>
>   . . . Sentencing on this matter will be addressed at the conclusion of the [Defendant's] case for change of custody and depending on the status of the bankruptcy at that time, the other two issues of contempt may also be held at a final hearing in case number 2009-DR-15-95.

  7. Debtor's Chapter 13 plan was confirmed on September 18, 2009. The confirmed plan provided for the treatment of the CitiFinancial and Wachovia debts and reflected that Debtor had surrendered her interest in the Kia.

  8. Debtor filed the Complaint initiating this adversary proceeding on September 6, 2011. The Complaint alleged that Defendant received notice of Debtor's bankruptcy case but

nonetheless, filed the Affidavit alleging that Debtor had failed to pay the debts addressed by the Settlement Agreement and treated in her Chapter 13 plan. The Complaint contended that the issuance and maintenance of the Rule as it related to the marital debts was a willful violation of the stay imposed by 11 U.S.C. § 362(a),[2] which entitled Debtor to damages pursuant to § 362(k)(1).

9. A trial on the Custody Complaint in Case No. 2009-DR-15-95 was held before the Family Court on September 19, 20, and 23, 2011 and November 1, 2011. The Family Court issued a final order in Case No. 2009-DR-15-95 (the "Custody Order") on November 22, 2011, in which Defendant's request for a change in custody was granted. The Custody Order did not specifically mention the Rule, but did state that the automatic stay imposed by Debtor's bankruptcy case "did not stay these custody proceedings but did stay issues pertaining to marital debts set forth in the parties divorce decree."

10. On October 7, 2011, Defendant filed a motion for relief from stay in Debtor's Chapter 13 case requesting that relief be granted to permit the Family Court to complete the Custody Complaint trial. Debtor filed an objection on October 17, 2011; however a hearing was not held as a result of Debtor's case being dismissed for non-payment on October 19, 2011.[3] Debtor filed a motion to reconsider dismissal on October 21, 2011, to which Defendant filed an objection on November 7, 2011 on the grounds that Debtor had not put forth a sufficient reason why her bankruptcy case should be reinstated. A hearing before this Court was held on November 17, 2011, after which the Court reinstated the case on the conditions that Debtor brought the case current immediately and that any future dismissal would be with prejudice for one year as to Chapters 11, 12, or 13.

---

[2] Further references to the Bankruptcy Code shall be by section number only.
[3] Neither party requested a rescheduled hearing on Defendant's motion for relief from stay.

4

11. Defendant filed his Answer to the Complaint and alleged that he did not receive written notice of Debtor's bankruptcy case because Debtor did not list his correct address, which is information she either knew or should have known. Additionally, the Answer stated that the Rule as it related to marital debts is not affected by Debtor's bankruptcy case so long as the Rule is held in abeyance while the automatic stay is in effect.

12. At the trial before this Court, numerous exhibits were entered into evidence, including the Divorce Decree, the Settlement Agreement, the Affidavit, the Rule Order, the Custody Complaint, and the Custody Order. Prior to any testimony, Defendant's counsel made a motion in limine to exclude any evidence that was not disclosed in discovery, specifically as it related to Debtor's alleged damages. Defendant's counsel also requested that two questions[4] sent to Debtor's counsel during discovery be deemed admitted based on Debtor's failure to answer.

13. Both Debtor and Defendant testified at the hearing. Debtor testified that she spoke to Defendant days prior to filing for bankruptcy regarding a number of matters but primarily in order to obtain his correct mailing address, and that she listed the address Defendant provided on her petition. Regarding damages, Debtor testified that she was requesting the attorney's fees incurred in bringing this adversary, and that the Rule Hearing caused her emotional distress and to incur expenses related to travel and lost wages. Debtor also testified that at the trial on the Custody Complaint, Defendant's counsel extensively questioned her about her bankruptcy case and that this caused her emotional distress. Debtor felt this line of

---

[4] The questions were sent as part of a request for admissions and were numbered nineteen and twenty, respectively. Defendant's counsel admitted that the page which contained question numbers ten through eighteen was unintentionally not sent to Debtor's counsel. Debtor's counsel did admit to receiving the pages with question numbers one through nine and nineteen through twenty. Question numbers nineteen and twenty read as follows:
   19. Do you admit that you purposely used an incorrect address for the defendant herein when you filed for bankruptcy?
   20. Do you admit that the defendant herein has taken no action since [the Rule Order] to attempt to enforce the marital debt that you agreed to pay in your marital agreement?

5

questioning was done in order to attack her character and to persuade the Family Court to grant custody of the parties' child to Defendant.

14.     During Defendant's testimony, he admitted having notice of Debtor's bankruptcy before he signed the Affidavit. He also stated that he made a note to himself about the bankruptcy case on January 15, 2009—nine days after Debtor filed her petition for relief and over a month before he signed and filed the Affidavit. Further, Defendant admitted contacting Wachovia about the unpaid Wachovia debt because he wanted to find out what "chapter 13 meant."

15.     Also testifying at the trial was R. Clenten Campbell, who prepared the Custody Complaint as well as the Affidavit and represented Defendant at the Rule Hearing. Mr. Campbell testified that Defendant had not advised him that Debtor was in bankruptcy at the time he prepared the Affidavit, and that once Debtor's counsel announced at the Rule Hearing that Debtor was in bankruptcy, he agreed that all issues relating to the Wachovia and CitiFinancial debts were stayed. However, Mr. Campbell testified that to his knowledge, the Rule was still pending as it related to these martial debts since no later order of the Family Court stated otherwise.

## CONCLUSIONS OF LAW

I.     **Willful Violation of the Automatic Stay**

Bankruptcy Code section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The Fourth Circuit has stated that a willful violation of the automatic stay occurs when a "creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in

6

spite of it." Weatherford v. Timmark (In re Weatherford), 413 B.R. 273, 285 (Bankr. D.S.C. 2009) (citing Budget Serv. Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292–93 (4th Cir. 1986)). Ignorance of bankruptcy law and the extent of the automatic stay is not an excuse for a willful violation. See id. at 284 n.6, 285 (noting that a party with questions about the scope or application of the automatic stay should petition the Court for guidance or else risk being sanctioned) (citations omitted).

Defendant's counsel contended that Defendant did not receive written notice of the petition because Debtor intentionally provided an incorrect mailing address for Defendant. Debtor testified that she spoke to Defendant solely to get his new address, and the address that he told her was listed on her petition. Regardless of whether Defendant received written notice of the petition, he admitted in his testimony that he had notice of Debtor's bankruptcy case before he signed and filed the Affidavit. The resulting Rule was issued in part because Debtor failed to pay two debts that were addressed in her bankruptcy case. In similar circumstances, this Court has held that such action constitutes a willful violation of the automatic stay. See In re Bonham, C/A No. 11-03369-JW, slip op. at 4–5 (Bankr. D.S.C. Nov. 21, 2011) (finding that a creditor ex-spouse's filing of an affidavit and complaint because of a debtor's failure to make debt payments pursuant to a separation agreement constituted a willful violation of the stay when the creditor had knowledge of the debtor's bankruptcy case, the debts were not in the form of domestic support, and a resulting state court rule to show cause was issued); see also In re Dill, 300 B.R. 658, 666, 668 (Bankr. E.D. Va. 2003) (finding that a Chapter 7 debtor's ex-spouse obtaining a post-petition contempt of court order in state court for the debtor's failure to fulfill prepetition financial obligations of a divorce agreement was a violation of the automatic stay when the debtor's obligations were not in the form of alimony, maintenance, or support).

Defendant argued that no stay violation took place because the Affidavit and Rule also addressed whether Debtor withheld their child's daycare location, and the Rule as it related to the marital debts was held in abeyance pending the completion of Debtor's bankruptcy. However, the Bankruptcy Code dictates otherwise. In relevant part, § 362(a)(1) provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
>
> > (1) *the commencement or continuation*, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

(emphasis added).

The Bankruptcy Code thus prohibits the commencement of any collection efforts that could have been commenced before the filing of a bankruptcy petition. This is because "[t]he primary purposes of the automatic stay provisions are to effectively stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [his] creditors, thereby affording the parties and the [Bankruptcy] Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." Taylor v. Slick, 178 F.3d 698, 702 (3d. Cir. 1999) (quoting Zeoli v. RIHT Mortg. Corp., 148 B.R. 698, 700 (D.N.H. 1993)).

After considering the language of § 362(a) and the evidence presented, this Court finds that Defendant committed a willful violation of the Stay which entitles Debtor to damages pursuant to § 362(k)(1). The evidence showed that Defendant had knowledge of Debtor's bankruptcy case when he signed and filed the Affidavit post-petition resulting in the post-petition Rule that sought collection of debts treated in Debtor's bankruptcy case. Defendant's efforts to

8

collect on these claims was barred by the stay imposed by § 362(a), as his actions constituted the commencement of a proceeding "to recover a claim against the debtor that arose before the commencement of the case under this title." § 362(a)(1); see also Taylor v. Slick, 178 F.3d at 702 ("[T]he filing of a bankruptcy petition prohibits the beginning ('commencement') of a judicial proceeding and the carrying forward ('continuation') of a proceeding that has already begun.").

Furthermore, this Court has held that an action taken in violation of the automatic stay is "void *ab initio*, and of no legal effect." McGuffin v. Barman (In re BHB Enters., LLC), No. 97-01975-JW, Adv. 97-80201, 1997 WL 33344249, at *4 (Bankr. D.S.C. Aug. 27, 1997); see also Ex Parte Reichlyn, 310 S.C. 495, 499, 427 S.E.2d 661, 663 (S.C. 1993) (stating that the automatic stay deprives a state court "of subject matter jurisdiction to take any action inconsistent with the stay."). Therefore, the Rule as it relates to the Wachovia and CitiFinancial debts should not have been issued and can no longer be maintained or continued because, as a violation of the automatic stay, it was void at the time it was issued. See In re Dill, 300 B.R. at 668 n.10 ("The contempt order was void whether entered before or after the discharge order because it was entered in violation of either the automatic stay or the discharge stay.")

## II.    Damages and Sanctions

In the Complaint, Debtor requested damages in the form of attorney's fees and costs incurred in attending the Rule Hearing as well as the costs related to this adversary proceeding. Debtor also asserted at the hearing that she suffered emotional distress as a result of having to defend the Rule as it related to the marital debts and because Defendant's counsel questioned her extensively about her bankruptcy case at the Custody Complaint trial.

9

The Court finds that Debtor is entitled to reasonable attorney's fees incurred in bringing this adversary proceeding, but is not entitled to the state court fees and costs incurred in attending the Rule Hearing or emotional distress damages. Fees and costs related to this adversary were necessary in order to have this Court determine whether Defendant violated the automatic stay and whether the aspects of the Rule aimed at the payment of the marital debts were void despite being held in abeyance. However, despite the inclusion of Debtor's failure to pay the Wachovia and CitiFinancial debts in the Affidavit, Debtor was still required to attend the Rule Hearing on the issue of whether she failed to provide the daycare location. It therefore appears that the costs Debtor incurred at the Rule Hearing, including attorney's fees and lost wages, can be reasonably attributed to the non-debt issues contained in the Affidavit.

Regarding emotional distress damages, the Court initially notes that Debtor did not specifically request emotional distress damages in the Complaint or in Debtor's response to Defendant's discovery requests.[5] Additionally, based on the evidence presented, the Court cannot reasonably apportion any emotional distress damages proximately caused by the marital debt aspects of the Rule from those caused by the childcare issues.[6] As to Defendant's attorney extensively questioning Debtor about her bankruptcy case at the Custody Complaint trial, the Family Court was the proper authority to determine whether such questions were appropriate at that time. See Parris v. Parris, 319 S.C. 308, 310, 460 S.E.2d 571, 572 (S.C. 1995) ("In making custody decisions the totality of the circumstances peculiar to each case constitutes the only scale

---

[5] In response to Defendant's discovery request that Debtor produce "[a]ny evidence of damages you suffered that you are suing for in this adversary action," Debtor's full response stated, "[d]amages include attorney fees (at an hourly rate of $335), lost wages for time to attend hearing on Rule to Show Cause, and expenses related to attending hearing on Rule to Show Cause."

[6] Compelling testimony linking the stay violation to a debtor's emotional distress is required to prove such damages. See In re Seaton, 462 B.R. 582, 603 (Bankr. E.D. Va. 2011) ("[C]aution should be high among the guiding principles of a court in awarding compensation for emotional distress in [the § 362(k)] context."); In re Grisard-Van Roey, 373 B.R. 441, 445 (Bankr. D.S.C. 2007) (requiring that a debtor to present corroborating testimony or medical evidence to support a claim of emotional distress damages) (citation omitted).

10

upon which the ultimate decision can be weighed.") Nonetheless, the Court does not mean to imply that there are no conceivable circumstances where a party's use of the fact that a debtor is in bankruptcy to the prejudice of that debtor could be determined to be a violation of the stay and cause for damages.

### III. Defendant's Motion in Limine and Request that Certain Matters be Deemed Admitted

At the start of the trial before this Court, Defendant's counsel made a motion in limine to exclude any evidence that was not provided in discovery, including an itemization of damages. Given that this Court has found that Debtor is not entitled to costs and attorney's fees related to the Rule Hearing or emotional distress damages, the motion is deemed moot in regards to those costs and fees. To the extent that the motion applies to attorney's fees related to bringing this adversary proceeding, the motion in limine is overruled. Debtor requested costs and attorney's fees related to this adversary in the Complaint, in her response to Defendant's discovery requests, and during her testimony. It is also clear that Debtor necessarily incurred attorney's fees and costs in bringing this action to address Defendant's violation of the stay and the outstanding Rule. While the better practice would have been to detail the attorney's fees and costs Debtor had incurred as of the date of the trial, Debtor's attorney could not have submitted a final fee affidavit prior to the completion of the trial before this Court. Allowing Debtor's attorney to file a fee and cost affidavit and giving Defendant an opportunity to respond is an appropriate means to further consider these damages.

Defendant also requested that certain items in a first set of requests for admissions be deemed admitted for failure to provide a response, specifically question numbers nineteen and twenty. However, Defendant's counsel admitted that the middle page containing question numbers ten through eighteen was unintentionally omitted. Additionally, question number

nineteen is essentially the same as question number two,[7] which Debtor answered in the negative. Question number twenty asked whether Debtor admitted that Defendant had taken no action to enforce the terms of the Settlement Agreement since the Rule Order was issued. At the trial before this Court, there was no dispute that Defendant had not taken further affirmative action. Assuming question twenty is deemed admitted, it does not affect the outcome of this Court's decision, which is based on the conclusion that the marital debt aspects of the Rule should not have been issued and that the Rule has been wrongly held in abeyance for over two years.

## CONCLUSION

For the reasons stated herein, this Court finds that Defendant committed a willful violation of the automatic stay by signing and filing the Affidavit with knowledge of Debtor's bankruptcy case and causing the issuance of the Rule regarding the payment of the martial debts, which has been maintained during the time that Debtor's bankruptcy has been pending before this Court. Debtor is entitled to damages in the form of costs and attorney's fees related to this adversary proceeding, and Debtor's attorney is to submit a fee affidavit itemizing these fees within five days of the entry of this order. Once the fee affidavit is submitted, Defendant's attorney is to have five days to file any response thereto. Defendant's motion in limine as it relates to damages for fees and costs and request that certain discovery questions be deemed admitted are denied. The Rule to Show Cause regarding to the Wachovia and CitiFinancial debts is hereby declared void and has no further legal effect. Within seven days of this Order, Defendant shall request that the Family Court dissolve the Rule and report to this Court if the Rule is not dissolved within ten days thereafter.

---

[7] Question number two asked whether Debtor "utilized an incorrect address for your former husband," whereas question number nineteen asked whether Debtor admitted that she "purposely used an incorrect address for the defendant herein when [she] filed for bankruptcy."

12

**AND IT IS SO ORDERED.**

**FILED BY THE COURT
03/29/2012**



Entered: 03/29/2012

John E. Waites

/s/ John E. Waites

Chief US Bankruptcy Judge
District of South Carolina